IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHINA LONON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 319-011 |
| | ) | |
| CINDY L. SMITH; PHIL HALL; | ) | |
| NATHAN BROOKS; CATHY LEWIS; | ) | |
| and DOCTOR CHENEY, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, filed his complaint pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.    **SCREENING THE COMPLAINT**

A.    **BACKGROUND**

Plaintiff names the following Defendants:  (1) Cindy L. Smith, a representative of Georgia Department of Corrections ("DOC"), Southern Region Office of Professional Standards; (2) Phil Hall, retired TSP Warden; (3) Nathan Brooks, current TSP Warden; (4) Cathy Lewis, TSP Deputy Warden of Care and Treatment; and, (5) Dr. Cheney, TSP physician. (Doc. no. 1,

pp. 1-3, 12.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On January 3, 2018, Plaintiff fell off the top bunk in his cell at TSP, hit the concrete floor on his right arm, and had to go the hospital for treatment.  (Id. at 16.)  Upon examination, the hospital doctor diagnosed a "labral tear of the rotator cuff," put Plaintiff's arm in a sling, prescribed Percocet pain pills, and scheduled Plaintiff for a follow up visit.  (Id. at 16-17.)  Upon Plaintiff's return to TSP, he received a bottom bunk profile but was actually assigned to a top bunk, resulting in Plaintiff having to sleep on the floor for an undisclosed amount of time because he was unable to get on the top bunk with his injured shoulder.  (Id. at 17.)

Plaintiff told Defendant Hall and Defendant Lewis about his assignment to a top bunk despite having a bottom bunk profile on one occasion when the Warden and Deputy Warden, respectively, conducted morning inspection, but no adjustment to his bunk assignment occurred. (Id. at 17-18.)  On March 21, 2018, Plaintiff filed a grievance requesting relocation to a "safer" housing unit because he could not properly defend himself with his shoulder injury.  (Id. at 18.) Defendant Lewis moved Plaintiff to A-2 dormitory, but Plaintiff's top bunk assignment did not change.  (Id. at 19.)  Plaintiff talked to Defendant Brooks about his bunk assignment once during morning inspection, but nothing was done to re-assign Plaintiff to a bottom bunk.  (Id.)

Plaintiff continued to complain about the extreme pain from his rotator cuff injury and had surgery performed by a specialist in Reidsville, Georgia, who gave Plaintiff a shot and Percocet pills for pain.  (Id. at 18.)  However, upon Plaintiff's return to TSP, Defendant Cheney substituted Ibuprofen for the post-surgery pain treatment prescribed by the specialist, resulting in Plaintiff experiencing agonizing pain and sleepless nights.  (Id. at 18-19, 22.)  During a follow up visit to the specialist in Reidsville, Plaintiff commented on only receiving Ibuprofen, resulting in

2

the specialist calling Defendant Cheney to request Plaintiff receive a stronger pain medication than Ibuprofen.  (Id. at 20.)  Defendant Cheney explained TSP does not provide inmates with Percocet and refused to give Plaintiff anything other than the ineffective Ibuprofen.  (Id.)  Defendant Cheney's refusal to provide adequate post-surgery pain treatment was based on a desire to save money, and providing only Ibuprofen for such severe post-surgery pain "amounted to no treatment at all."  (Id. at 22.)

Plaintiff blames his fall and subsequent medical woes on inadequately sized bunk beds without guard rails which were mis-installed and do not have adequate rungs or a ladder to access the top bunk.  (Id. at 12-13.)  The structure of the bunks forces Plaintiff to choose between "either stepping on his roommate['s] mat to prop himself up, which in the prison context is viewed as a disrespect," or take a risk of "leaping up and down the top bunk without adequate support."  (Id. at 13.)  When Plaintiff filed a grievance about the safety of the bunk beds, Defendant Smith performed a cursory review that did not adequately investigate the safety of the bunk beds or consider the disruption to Plaintiff's daily schedule caused by his rotator cuff surgery.  (Id. at 20-21.)  Moreover, Defendants Hall, Lewis, and Brooks should have made sure Plaintiff's bottom bunk profile was honored.  (Id. at 21-22.)

Plaintiff seeks a declaratory judgment that his Eighth Amendment rights were violated by (1) Defendants Hall, Lewis, and Brooks not exercising supervisory authority to make sure Plaintiff's bottom bunk profile was honored and make sure the bunk beds were safe, (2) Dr. Cheney not providing adequate post-surgery medical care, and (3) Defendant Smith, as a DOC representative, "endorsing the mis-installed bunks" with her response to Plaintiff's grievance, allowing a continuing threat to Plaintiff's safety.  (Id. at 23-25.)   Plaintiff also seeks

compensatory and punitive damages from all Defendants in their individual and official capacities.  (Id. at 2-3, 24-25.)

B.    **DISCUSSION**

1.    **Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting

4

Twombly, 550 U.S. at 555, 557).   In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).   However, this liberal construction does not mean that the Court has a duty to re-write the complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

Plaintiff's allegations against the four supervisory officials he names as Defendants fail to state a claim for relief.  By separate Order, the Court directs service of process on Defendant Cheney for Plaintiff's medical deliberate indifference claim.

## 2.    Bunk Beds

Plaintiff claims his Eighth Amendment rights were violated by having to sleep on an inadequately-sized, "mis-installed" bunk bed without an adequate ladder or guard rail and then having to sleep on the floor when his bottom bunk profile was not honored.

A claim for deliberate indifference under the Eighth Amendment requires satisfaction of an objective and a subjective component. To state a valid claim, Plaintiff must allege a defendant not only had (1) subjective knowledge of a risk of serious harm, but he or she also (2) disregarded that risk, (3) by conduct that is more than mere negligence.  See Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

To satisfy the objective component, the prisoner must show the challenged prison condition is "extreme" and "pose[s] an unreasonable risk of serious damage to [the prisoner's] future health or safety."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir.

2004) (internal quotations omitted).  In order to violate the Eighth Amendment, the risk of harm from the condition must be "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  Id. (emphasis in original).  Stated differently, "the Constitution does not mandate comfortable prisons," and the condition must result in the denial "of the minimal civilized measure of life's necessities."  Id.

To satisfy the second prong, a defendant must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference.  Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (*per curiam*).  Stated another way, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  Farmer v. Brennan, 511 U.S. 825, 838 (1994).  A prison condition generally does not violate the Eighth Amendment unless it involves "the wanton and unnecessary infliction of pain."  Chandler, 379 F.3d at 1289.

Here, Plaintiff's conclusory allegations the inadequately-sized bunk beds were "mis-installed" fails to state a claim.  There is nothing to indicate any Defendant had specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff or any other inmate due to any size or installation problems, that any Defendant actually drew this inference, or that they did not respond reasonably to this risk.  Cf. Clark v. Allen, 2:09-CV-1065-WKW, 2012 WL 949814, at *5 (M.D. Ala. Feb. 27, 2012) *report and recommendation adopted*, 2:09-CV-1065-WKW, 2012 WL 949777 (M.D. Ala. Mar. 20, 2012) (alleging locker fell on plaintiff and prison official knew of propensity to fall was insufficient to demonstrate deliberate indifference).  Indeed, Plaintiff does not allege any other inmates were injured by falling off the bunk beds prior to his accident.  At most, the

allegations suggest negligence.  See id. (citing Arnold v. South Carolina Dep't of Corr., 843 F. Supp. 110, 113 (D.S.C. 1994) ("[t]o convert conduct that does not even purport to be punishment into 'cruel and unusual punishment,' defendants must demonstrate more than ordinary lack of due care for the prisoner's interests or safety"); McKnight v. McDuffie, No. CV 405-183, 2007 WL 1087280, at *5-6 (S.D. Ga. Apr. 9, 2007) (finding no deliberate indifference where jail official failed to take immediate action after one-time notification to fix broken bunk bed that eventually collapsed on plaintiff).

Moreover, the Eleventh Circuit has determined "sleeping approximately eight feet above the floor without a panic button or railings - do[es] not violate contemporary standards of decency, and thus, do[es] not constitute cruel and unusual punishment under the Eighth Amendment."  Brown v. Pastrana, 446 F. App'x 270, 272 (11th Cir. 2011) (per curiam). Nor does his allegation about the lack of a ladder or rungs show he was denied "the minimal civilized measure of life's necessities."  Id.  Plaintiff does not describe the size of the bunk beds or the exact height of the top bunk, but he concedes the top bunk is accessible if he were to step on the mat of a roommate to support himself.  (Doc. no. 1, p. 13.)

Neither sleeping on a bed that might not allow for as much room to move as a prisoner may prefer nor requiring a prisoner to move a mat or stand to the side of a mat to access a top bunk to avoid "disrespecting" a cell mate amounts to a denial of the minimal civilized measure of life's necessities.  "[T]he Constitution does not mandate comfortable prisons."  Chandler, 379 F.3d at 1289.  In any event, even if the Court were to assume the bunk beds were "compact," not properly installed, or not equipped for accessing the top bunk via a ladder, as discussed above, Plaintiff has not alleged Defendants had the requisite,

subjective state of mind to know there was a substantial risk of harm Plaintiff would fall off the top bunk.  See Farmer, 511 U.S. at 837.

As to the failure to honor Plaintiff's bottom bunk profile, at best, Plaintiff alleges he notified Defendants Hall, Brooks, and Lewis on one occasion (each) during morning inspection that he had a bottom bunk profile that was not honored.[1]  Plaintiff does not allege these three supervisory officials were personally responsible for bunk assignments, let alone that they intentionally refused to assign him to a bottom bunk; to the contrary he states they told him they would look into the problem but then failed to make a change.  A negligent failure to make a change, or bureaucratic misunderstanding about who was going to make a bunk assignment change, cannot support an Eighth Amendment deliberate indifference claim.  See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, Plaintiff fails to provide any details about his allegation of having to sleep on the floor for a non-specific period of time, but the Eleventh Circuit has determined temporarily sleeping on the floor does not necessarily amount to an unconstitutional condition of confinement.  See Jacoby v. Baldwin Cty, 835 F.3d 1338, 1345 (11th Cir. 2016); Evans v. St. Lucie Cty. Jail, 448 F. App'x 971, 975 (11th Cir. 2011) (per curiam).

In sum, Plaintiff fails to state a claim upon which relief can be granted against any Defendant as to his conditions of confinement claims regarding the bunk beds.

### 3.    Grievance Review

Plaintiff alleges Defendant Smith, as a DOC representative, should be held liable because she did not perform an adequate investigation when responding to Plaintiff's

---

[1]Plaintiff's allegations regarding notification via the grievance system are discussed below.

grievance.  Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure."  Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*).  Thus, any claim that Defendant Smith, or a Warden who denied Plaintiff's grievance at TSP, mishandled Plaintiff's grievance or improperly denied a grievance fails to state a claim upon which relief may be granted.  See id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . .  A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").

### 4.     Supervisory Authority

Plaintiff also fails to state a claim against Defendants Smith, Hall, Brooks or Lewis based on their supervisory positions.  "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676)

(internal quotations omitted).  Therefore, to hold Defendants Smith, Hall, Brooks and Lewis liable, Plaintiff must demonstrate that either (1) each Defendant actually participated in the alleged constitutional violation, or (2) there is a causal connection between each Defendant's actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  Here, Plaintiff appears to name Defendants Lewis (DOC), Hall and Brooks (Wardens), and Lewis (Deputy Warden) as Defendants not because of their direct involvement in the events about which he complains, but by virtue of their supervisory positions at DOC or TSP.  (See generally doc. no. 1.)  For example, Plaintiff specifically mentions the "supervisory authority" of Defendants Hall and Brooks and states Defendant Lewis is "in charge of the supervision of the overall conditions" at TSP.  (Id. at 14, 15.)

Nor can Plaintiff establish any of these four supervisory Defendants were directly involved with the assembly of the bunk beds, determining bed assignments based on a profile, or providing medical treatment simply by alleging they viewed a letter and/or a grievance Plaintiff wrote about his problem(s).  See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (per curiam) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, inter alia, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), cert. denied, 530 U.S. 1264 (2000); Crowder v.

10

Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Likewise, Plaintiff must allege a causal connection between each Defendant and the asserted constitutional violations.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences."  Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection between these four supervisory Defendants and any alleged constitutional violations.  First, as discussed above, there is no actionable, underlying constitutional violation as to the claims related to the bunk beds and his bottom bunk profile and thus no basis for *respondeat superior* liability on those claims.  See

11

Dang v. Sheriff, Seminole Cty., Fla., 871 F.3d 1272, 1283 (11th Cir. 2017).  Second, as to the bunk beds and profile, Plaintiff has made no showing of (1) a history of widespread abuse regarding falls from the bunk beds or disregard of profiles, (2) an improper custom or policy put in place by any Defendant regarding the bunk beds or profiles, or (3) an inference any of the four supervisory Defendants directed prison employees to act, or knew they would act, unlawfully.

Third, there has been no showing of personal participation by any of the four Defendants in the medical treatment about which Plaintiff complains with respect to Defendant Cheney, the medical deliberate indifference claim the Court is allowing to go forward.  Courts have recognized that supervisory prison officials who are not medical professionals are entitled to rely on the decisions of trained medical practitioners regarding care provided to inmates.  See Williams v. Limestone Cty., Ala., 198 F. App'x 893, 897-98 (11th Cir. 2006) (per curiam); Rutledge v. Lift, CV 307-055, 2009 WL 2842739, at *8 (S.D. Ga. July 22, 2009) (citing Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988)), adopted by 2009 WL 2900276 (S.D. Ga. Sept. 3, 2009).

In sum, Plaintiff has not shown Defendants Smith, Hall, Brooks, or Lewis actually participated in the alleged constitutional violations; nor has he drawn the necessary causal connection to any alleged constitutional violations.

### 5.    Official Capacity Monetary Damages

Plaintiff states he is suing Defendants in their individual and official capacities. However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore,

Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

## II.     CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which can be granted against Defendants Smith, Hall, Brooks, or Lewis.   Accordingly, the Court **REPORTS** and **RECOMMENDS** these four Defendants, along with all official capacity claims for money damages, be **DISMISSED** from this case.   By separate Order, the Court directs service of process on Defendant Cheney for Plaintiff's medical deliberate indifference claim.

SO REPORTED and RECOMMENDED this 19th day of March, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA