IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| CHINA LONON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 319-011 |
| | ) |
| DOCTOR DAVID CHENEY, | ) |
| | ) |
| Defendant. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, commenced the above-captioned civil rights case *pro se* and is proceeding *in forma pauperis* ("IFP"). Defendant filed a pre-answer motion to dismiss. (Doc. no. 13.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**.

**I.    BACKGROUND**

**A.    Procedural History**

Plaintiff initially named five Defendants, and because he is proceeding IFP, the Court screened the complaint. (See doc. nos. 1, 7, 8.) Without objection from Plaintiff, United States District Judge Dudley H. Bowen, Jr., dismissed four Defendants and all official capacity claims for monetary damages. (Doc. no. 10.) The Court allowed an Eighth Amendment deliberate indifference claim to proceed against Defendant Cheney based on allegations of improper post-surgery medical treatment. (Doc. no. 8.)

Defendant Cheney moves to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. (See doc. no. 13-1.) Plaintiff did not respond to the motion, and it is therefore unopposed pursuant to Local Rule 7.5.

### B.   Complaint Allegations

With respect to Defendant Cheney, Plaintiff alleges the following facts in his complaint signed on January 7, 2019. (Doc. no. 1, pp. 11, 25.) On January 3, 2018, Plaintiff fell off the top bunk in his cell at TSP, hit the concrete floor on his right arm, and had to go the hospital for treatment. (Id. at 16.) Upon examination, the hospital doctor diagnosed a "labral tear of the rotator cuff," put Plaintiff's arm in a sling, prescribed Percocet pain pills, and scheduled Plaintiff for a follow up visit. (Id. at 16-17.) Plaintiff continued to complain about the extreme pain from his rotator cuff injury and had surgery performed by a specialist in Reidsville, Georgia, who gave Plaintiff a shot and Percocet pills for pain. (Id. at 18.)

However, upon Plaintiff's return to TSP, Defendant Cheney substituted Ibuprofen for the post-surgery pain treatment prescribed by the specialist, resulting in Plaintiff experiencing agonizing pain and sleepless nights. (Id. at 18-19, 22.) During a follow up visit to the specialist in Reidsville, Plaintiff commented on only receiving Ibuprofen, resulting in the specialist calling Defendant Cheney to request Plaintiff receive a stronger pain medication than Ibuprofen. (Id. at 20.) Defendant Cheney explained TSP does not provide inmates with Percocet and refused to give Plaintiff anything other than the ineffective Ibuprofen. (Id.) Defendant Cheney's refusal to provide adequate post-surgery pain treatment was based on a desire to save money, and providing only Ibuprofen for such severe post-surgery pain "amounted to no treatment at all." (Id. at 22.)

Plaintiff seeks a declaratory judgment that his Eighth Amendment rights were violated by Defendant Cheney not providing adequate post-surgery medical care. (Id. at 23-25.) Plaintiff also seeks compensatory and punitive damages from Defendant Cheney. (Id. at 24-25.) As to the issue of exhaustion of administrative remedies, Plaintiff states he "has exhausted his administrative remedies with respect to all Defendants and all claims." (Id. at 21; see also id. at 6-8.)

Defendant produced the affidavit Cynthia Stewart, the Chief Counselor at TSP. (See doc. no. 13-2 (Stewart Aff.).) The Chief Counselor's responsibilities include ensuring compliance with the Georgia Department of Corrections ("GDOC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶ 2.) The Chief Counselor identified five grievances Plaintiff filed at TSP, two of which related to medical care. (Id. ¶¶ 11, 16 & Ex. 2 (doc. no. 13-4).) Plaintiff filed three appeals, but he did not appeal either of the two denied grievances concerning his medical care. (Doc. no. 13-4, p. 2.) Of the two denied medical grievances, only one addresses the deliberate indifference claim raised against Defendant Cheney. (Stewart Aff. ¶ 16.)

Specifically, Plaintiff filed Grievance Number 277770, wherein he alleged he had shoulder surgery on October 27, 2018, and had asked for pain medicine because the medicine he had been provided did not help with his pain. (Id. & Ex. 7 (doc. no. 13-9).) There is some confusion about the date the grievance was submitted because the institutional officer dated the grievance October 27, 2018 (the stated date of Plaintiff's surgery), but Plaintiff dated the grievance November 6, 2018. (Doc. no. 13-9, p. 2.) The Warden denied the grievance on December 11, 2018, and Plaintiff signed for receipt of the response on January

3

2, 2019.  (Id. at 3.)  The Warden's Response informed Plaintiff he had seven days to file an appeal, (id.), but as explained above, Plaintiff did not file an appeal of the denial.  (Stewart Aff. ¶ 16; see also doc. no. 13-4, p. 2.)

**II.    DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS LAWSUIT**

### A.    The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether

5

administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.

### B. The Administrative Grievance Procedure

According to the Chief Counsel, the administrative grievance procedure applicable in this case is the version of the GDOC's SOP IIB05-0001, Policy No. ("PN") 227.02, which became effective on February 26, 2018.  (Stewart Aff. ¶ 3 & Ex. 1 (doc. no. 13-3).)

The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing the Original Grievance with a counselor.  Id. § IV(C)(1)(c).  The counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id.

6

§ IV(C)(1)(d).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  Id.

The SOP requires the Warden give a response to the counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(g).  Once the offender receives the Warden's response, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal.  Id. § IV(C)(2).  The inmate has seven calendar days from the date he receives the response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the offender.  Id. § IV(C)(2)(e).

### C. Plaintiff's Failure to Exhaust

Plaintiff signed his complaint on January 7, 2019, and it was filed in the Southern District of Georgia on January 15, 2019.  (Doc. no. 1, pp. 1, 11, 25.)  Plaintiff's grievance history establishes he filed one grievance related to his post-surgery request for stronger pain medication, Grievance Number 277770.  (Stewart Aff. ¶ 16; doc. no. 13-9.) As Plaintiff did not respond to the motion to dismiss, there is no dispute this is the only grievance he filed concerning his claim against Defendant Cheney.  Plaintiff dated his grievance November 6, 2018, and the Warden denied the grievance on December 11, 2018, within the forty-day time-period allowed. (Doc. no. 13-9, pp. 2-3; PN 227.02 § IV(C)(1)(g).)  Plaintiff signed for receipt of the response on January 2, 2019.  (Doc. no. 13-9, p. 3.)  There is no explanation for the delay in providing the Warden's response to Plaintiff, but when Plaintiff signed for the

response, the paperwork informed him he had seven days from receipt of the response to appeal. (Id.)

The Court recognizes Plaintiff generally stated in his complaint he exhausted "his administrative remedies with respect to all Defendants and all claims." (Doc. no. 1, p. 21.) However, Defendant produced evidence of Plaintiff's grievance history at TSP showing he filed one grievance related to the claims against Defendant Cheney but had not appealed the Warden's denial of Grievance 277770. (Stewart Aff. ¶¶ 11, 16; doc. nos. 13-4, 13-9.) Plaintiff did not dispute that evidence, and Defendant therefore satisfied his burden under Turner, *supra*.

Even if the Court were assume the Warden's response violated the time requirements of the grievance policy because it was not provided to Plaintiff until January 2, 2019, over forty days after submission of the grievance, the grievance process provides an inmate may proceed to step two and file an appeal if the time allowed for a response to the grievance has expired without action. PN 227.02 § IV(C)(2). Thus, even if Plaintiff thought his grievance had been ignored by the Warden, to exhaust his administrative remedies, Plaintiff would have had to file an appeal. He undisputedly did not.

Because Plaintiff did not exhaust his administrative remedies with respect to his claim against Defendant Cheney prior to initiating this lawsuit, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261. Because the motion to dismiss should be granted based on Plaintiff's failure to

8

exhaust, the Court need not address Defendant's argument for limiting Plaintiff's potential recovery to nominal damages.  (See doc. no. 13-1, pp. 8-9.)

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 13), and this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of July, 2019, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA
